## Huff v. The State.

Conviction of murder is not sustained by evidence showing that a road overseer summoned the accused to work on the public road; that he appeared with an axe, which he was directed by the overseer to turn over to another person also at work on the road, and to take a hoe; that he objected, stating that the axe belonged to himself, and he thought every one ought to work with his own tools, but complied when the overseer said he would send to a house for an axe; that the overseer's brother then came up and asked what was the matter, to which the overseer replied, stating what had taken place between him and the accused, and that the accused was "swelled up" about it, and the brother said, "We will take the swelling out of him," and drew back with a hoe in his hand in the attitude of striking the accused, who also drew back the hoe he had taken, in the same attitude; that the overseer said to his brother, "Don't hit him with the hoe," ran up and struck the accused on the head with a stick, in one end of which was a small iron or leaden ball; and that the accused immediately struck the overseer with his hoe, inflicting a wound on the head producing death, upon which the brother with his hoe knocked

the accused down, and as he started to rise knocked him down again.

(a) Whether the homicide was justifiable, or was voluntary manslaughter, is for decision by the jury, under the charge of the court.

April 23, 1890.

Murder. Criminal law. Verdict. Evidence. Manslaughter. Before Judge LUMPKIN. Oglethorpe superior court. October term, 1889.

Reported in the decision.

PHIL. W. DAVIS, by J. H. LUMPKIN, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, and W. M. HOWARD, solicitor-general, by HARRISON & PEEPLES, for the State.

BLANDFORD, Justice.

Huff was indicted in the superior court of Oglethorpe county, in that, it was alleged, he did kill and murder Louis Waller. He was put upon his trial and found guilty, and was sentenced to be hanged. He moved for a new trial upon the ground that the verdict was without sufficient evidence to support it. The evidence showed that the deceased, as road-overseer, had summoned the accused to work on the public road, and that he appeared with an axe. He was directed by the deceased to turn over the axe to Wheelis, a white boy, who was. also at work on the road, and to take a hoe. To this he objected, stating that the axe belonged to himself, and that he thought every one ought to work with his own tools. He complied, however, when the overseer stated that he would send to the house for an axe. Frank Waller, a brother of the deceased, came up and asked what was the matter. When the deceased stated what had taken place between him and Huff, and that Huff was " swelled up" about it, the brother replied, " We will take the swelling out of

him," and drew back with a hoe in his hand in the attitude of striking Huff; and Huff also drew back the hoe which he had, in the attitude of striking the brother. Thereupon the deceased said to his brother, "Don't hit him with the hoe," and ran up to Huff and struck him on the head with a stick, the stick having a head on it composed of iron or lead "as large as a marble." Huff, to use the language of a witness, "like a flash" struck the deceased with his hoe, inflicting a wound on the head, of which he died. The brother of the deceased was then within striking distance of the accused, with a hoe in his hand, and knocked the accused down, and as he started to rise, knocked him down again. These are the facts as we learn them from the evidence set forth in the record.

We think it needs only this statement of the facts to show that the verdict is without evidence to support it. There is one material element in the crime of murder which these facts fail to show, that is, malice. Malice is a deliberate intent unlawfully to take away human life, and we cannot say from this evidence that such an intent existed. Is it manslaughter? Voluntary manslaughter is defined to be the unlawful killing of a human creature without malice, either express or implied, and without any mixture of deliberation whatever; and in all cases of voluntary manslaughter there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. We are of the opinion that the defendant could not have been convicted of any higher grade of homicide than voluntary manslaughter, even if he could have been lawfully convicted of that. It was clearly not the offence of murder.

Was this justifiable homicide? The code provides that one may kill another in self-defence, or in defence of one's person. He may kill one who manifestly intends or endeavors by violence or surprise to commit a felony upon him. It is further provided that a bare fear of the offence to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of these fears and not in a spirit of revenge. So if it should appear that the accused killed the deceased in order to prevent him from committing, by violence or surprise, a felony on his person, and that the circumstances were such as to excite the fears of a reasonable man that such was the purpose of the deceased, and that the accused really acted under the influence of these fears, and not in a spirit of revenge, then it would be a case of justifiable homicide. The evidence shows clearly that the accused made no assault upon the deceased or his brother, but that the first assault was made by the brother of the deceased, and that immediately thereafter an assault was actually made by the deceased upon the accused, and this too when the brother of the deceased was in striking distance of the accused, with a weapon likely to produce death, a hoe with a handle on it.

Now it will be for the jury, under a proper charge of the court, to determine whether the homicide was voluntary manslaughter or justifiable homicide; and for the reasons we have stated, we direct that another trial be had to the end that the same may be in conformity with these views.          *Judgment reversed.*